**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RACHEL M. W., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22-CV-557-MTS |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Rachel M. W. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education,

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account her age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were

applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). A court, however, may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## Background and Procedural History

On June 24, 2020, Plaintiff filed an application for Title XVI supplemental security income benefits (42 U.S.C. § 1381, *et seq.*) under the Social Security Act. (R. 21). She alleged an inability to work beginning on June 24, 2020, due to limitations resulting from reflex sympathetic dystrophy ("RSD") and pain in the left arm. (R. 10, 233). Plaintiff was twenty-one years old at the time of the ALJ's decision. (R. 32, 230). She has a ninth-grade education and no past relevant work. (R. 32, 234).

Plaintiff's application was denied both initially and upon reconsideration. (R. 21, 117-19, 128-32). At Plaintiff's request, ALJ Laura Roberts conducted an administrative hearing on February 10, 2022. The hearing was held by teleconference pursuant to COVID-19 procedures.

3

(R. 21, 40-74, 166-69).  ALJ Roberts issued a decision on March 29, 2022, denying benefits and finding Plaintiff not disabled.  (R. 21-34).  Plaintiff sought review by the Appeals Council, which it denied on August 5, 2022.  (R. 7-12).  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since June 24, 2020, the application date.  (R. 23).  At step two, she found Plaintiff suffered from severe impairments of complex regional pain syndrome ("CRPS"), major depressive disorder, and post-traumatic stress disorder ("PTSD").  (R. 24).  The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment.  (R. 24-26).  Based upon her consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded Plaintiff retained "the [RFC] to perform light work as defined in 20 CFR [§] 416.967(b)" with the following additional limitations:

> [T]he claimant cannot climb ladders, ropes, or scaffolds, can occasionally stoop, occasionally reach overhead with the right upper extremity, occasionally climb ramps and stairs, crouch, crawl, kneel, and balance on uneven, moving, or narrow surfaces, and can perform no work involving any exposure to dangerous moving machinery or unprotected heights.  The claimant can understand, remember, and carry out simple and detailed, but not complex, tasks (SVP 1-4), can occasionally interact with coworkers and supervisors, can have no interaction with the public (but contact is okay), no tandem or team work, and can have occasional changes in work process.

(R. 26).

At step four, the ALJ determined Plaintiff had no past relevant work.  (R. 32).  After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of final inspector, conveyor line bakery worker, mail clerk, and

office helper, all of which she found existed in significant numbers in the national economy. (R. 33, 68-72). As a result, the ALJ found Plaintiff had not been under a disability since June 24, 2020, the date the application was filed. (R. 33).

## Errors Alleged for Review

Plaintiff raises two allegations of error in her challenge to the Commissioner's denial of benefits on appeal: (1) the RFC "failed to include all of [her] limitations and she cannot perform other work existing nationally in sufficient numbers"; and (2) the ALJ improperly considered the medical source evidence. (Docket No. 8 at 4-10). For purposes of clarity, the Court addresses Plaintiff's allegations of error in the order set forth below.

## Consideration of Plaintiff's Left-Hand Impairment

Plaintiff argues the ALJ's RFC assessment fails to include any handling limitations associated with her left wrist even though the consultative physical examiner determined Plaintiff had a decreased range of motion. She contends that if a handling limitation was included in the RFC or the hypothetical questioning of the VE, she could not perform the identified jobs, as all four require frequent handling. (Docket No. 8 at 5).

The ALJ specifically addressed Plaintiff's treatment for her left wrist impairment in the decision. Examination findings from July of 2020 revealed tenderness in the wrist and along the thumb tendons, pain with range of motion, decreased sensation, and positive Finkelstein's sign, which the examining physician assistant determined was consistent with de Quervain's tenosynovitis. (R. 27, 349-50, 390-91). However, Plaintiff's distal motor function was intact, she exhibited good strength, and had no swelling, crepitus, bony tenderness, or deformity of the wrist or hand. *Id*. In August of 2020, Plaintiff exhibited tenderness and decreased sensation in her left

5

arm, but X rays of her left forearm and wrist were normal. Plaintiff was diagnosed with RSD. (R. 27-28, 375-76, 381-84).

On March 5, 2021, Plaintiff was examined by consultative examiner Heather Konsure, D.O. Plaintiff reported her "major disability [was] her back pain." (R. 28, 403). She could personally care for herself and do household chores, but the chores took longer because of the pain and the need for breaks. *Id*. The ALJ summarized Dr. Konsure's examination findings, including that Plaintiff had a "limited range of motion with active bilateral shoulder movement, abnormal wrist range of motion, and limited lumbar flexion[.]" (R. 28, 406-07). Dr. Konsure specifically determined Plaintiff had a fifty percent reduction in pronation, supination, and palmar and dorsal movement of the left wrist. (R. 407). However, her examination also revealed "no muscle atrophy, normal and equal grip strength, . . . and normal elbow, finger, and bilateral thumb range of motion[.]" (R. 28, 404, 407-08). There was no sensory loss in Plaintiff's first three fingers, and she could oppose thumb to fingertip, manipulate small objects, and effectively grasp tools such as a hammer. (R. 408). Dr. Konsure assessed Plaintiff with CRPS, mild degenerative disc disease, PTSD, and depression. (R. 404).

In July of 2021, Plaintiff exhibited normal range of motion generally, but she was experiencing left-hand tenderness and pain and burning from the left forearm into her fingers. (R. 28, 516). Later that month, she requested a referral to neurology "for possible TENS treatment for her CRPS diagnosis[.]" (R. 28, 525). Plaintiff reported pain in her left arm/hand, which caused her hand to be nonfunctional at times, and she was starting to experience similar pain in her right forearm. (R. 525). Examination findings from September of 2021 included tenderness of the left hand, and Plaintiff was diagnosed with CRPS, which was noted to be affecting both her upper arms. (R. 28, 569-70). She was referred to a pain clinic. (R. 28, 570). In December of 2021,

Plaintiff's musculoskeletal system examination included a general finding of "[f]ull ROM present." (R. 29, 594).

Additionally, the ALJ discussed the opinion of reviewing state agency physician David Coffman, M.D. Dr. Coffman reviewed the record, which included Dr. Konsure's consultative examination of Plaintiff. He specifically noted Dr. Konsure's examination findings that Plaintiff exhibited "normal grip and hand skills, normal muscle strength[.]" (R. 30, 110). He also relied upon Plaintiff's activities of daily living. *Id*. On March 24, 2021, he concluded Plaintiff could perform light work with occasional stooping. (R. 30, 107-11). The ALJ found Dr. Coffman's opinion "somewhat persuasive," noting the evidence was "more consistent with additional limitations in climbing, crouching, kneeling, crawling, balancing, and reaching as well as limitations in exposure to hazards such as dangerous moving machinery and unprotected heights." (R. 30).

Further, the ALJ considered Plaintiff's function report, hearing testimony, and the third-party statement completed by Plaintiff's husband. (R. 27). While the ALJ acknowledged Plaintiff's upper extremity pain, her diagnosis of CRPS, and physical examinations which included upper extremity tenderness and abnormal range of motion, she also relied upon the minimal treatment received by Plaintiff and testimony that Plaintiff was no longer taking pain medication and had never participated in physical therapy. (R. 28, 29, 30). The ALJ further relied on Plaintiff's ability to perform several activities, including maintaining her personal care, doing some chores, going out alone, shopping in stores, occasionally attending church, and handling money. (R. 29, 32). In conclusion, the ALJ determined an RFC for "light duty work with no climbing ladders, ropes, or scaffolds, occasional stooping, reaching overhead with the right upper extremity, climbing ramps and stairs, crouching, crawling, kneeling, and balancing on uneven,

moving, or narrow surfaces, and no work involving any exposure to dangerous moving machinery or unprotected heights" was supported by Plaintiff's treatment notes, examination findings, and activity level.  *Id.*

This Court finds no error by the ALJ for not including handling limitations in Plaintiff's RFC based upon Dr. Konsure's decreased range of motion findings.  As demonstrated in the decision, the ALJ considered Plaintiff's treatment records regarding Plaintiff's left hand and wrist, including Dr. Konsure's limited range of motion findings.  However, Dr. Konsure did not attribute any specific functional limitations to her findings.  Thus, other than considering the evidence, the ALJ had no other duty.  *See Endriss v. Astrue*, 506 Fed. Appx. 772, 778 (10th Cir. 2012) (noting that "[t]he ALJ was not required to discuss" the physician's "notes in her treatment records about the limitations in [the plaintiff's] cervical range of motion" because the notes did not constitute "an opinion that could be evaluated by the ALJ" when the physician "did not opine as to how those limitations would affect [the plaintiff's] ability to function.").[2]  Moreover, Dr. Konsure's examination also included findings that Plaintiff had normal and equal grip strength and could perform manipulative tasks with her hands (*e.g.*, manipulating small objects and grasping tools),

---

[2] In support of her argument, Plaintiff cites to *Kerwin v. Astrue*, 244 Fed. Appx. 880 (10th Cir. 2007) and *Callis v. Astrue*, No. CIV-06-1324-R, 2008 WL 822059 (W.D. Okla. Mar. 26, 2008). The Court has reviewed both authorities and finds they are distinguishable from Plaintiff's case. In *Kerwin*, the court remanded the case for the ALJ to consider certain findings by the consulting physician regarding the claimant's hands and wrists when determining the RFC and jobs the claimant could perform at step five.  244 Fed. Appx. at 884-85.  In *Callis*, the court relied upon *Kerwin*, and remanded the case for the ALJ's failure to discuss findings by the consultative examiner, including a finding of zero mobility of the left wrist, and the failure to include related limitations in the RFC.  2008 WL 822059, at *2.  However, in both *Kerwin* and *Callis*, the ALJ failed to consider the evidence at issue.  In Plaintiff's case, the ALJ specifically considered Dr. Konsure's examination findings, including Plaintiff's reduced range of motion in the left wrist, along with the other evidence of record.  She concluded the evidence supported only those limitations included in the RFC.  (R. 29, 32).

which supports the ALJ's decision not to include a handling limitation in the RFC. Further, the ALJ considered Dr. Coffman's opinion and Plaintiff's own complaints.

Because the ALJ considered the evidence and presented a hypothetical question to the VE which included those physical limitations she adopted in the RFC (R. 58-61), there is no step-five error. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for the denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). To find otherwise would result in the Court's reweighing of the evidence, which it cannot do. *See Casias*, 933 F.2d at 800.

## Consideration of the Medical Source Evidence

Medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under these rules, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must "articulate" in the decision how persuasive she finds each medical source's opinion by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The

9

most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[3]

The regulations explain that for supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(1), 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(2), 416.920c(c)(2).

Plaintiff first argues the ALJ failed to properly consider the opinion of consulting psychologist Peter Ciali, Ph.D., when determining her mental RFC. She asserts the ALJ failed to properly evaluate Dr. Ciali's opinion that Plaintiff had "marked" deficits in her ability to adapt, including the ALJ's failure to consider Plaintiff's scores on the Patient Health Questionnaire ("PHQ-9") and the Generalized Anxiety Disorder Questionnaire ("GAD-7"). (Docket No. 8 at 6-7). Plaintiff contends that by finding she was only moderately limited in the ability to adapt, the ALJ substituted her own judgment for that of Dr. Ciali.[4] *Id*. at 7.

The ALJ specifically discussed Dr. Ciali's consultative examination of Plaintiff in the decision, finding his opinion "somewhat persuasive." (R. 31). She acknowledged Dr. Ciali's

---

[3] Generally, the ALJ is not required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how she considered the other factors. *Id*., §§ 404.1520c(b)(3), 416.920c(b)(3).

[4] It does not appear Plaintiff is challenging the limitations the ALJ included in the RFC related to her ability to socially interact with others.

opinion that Plaintiff was mildly impaired in her ability "to perform work related mental activities including remembering information, understanding instructions, and maintaining sustained concentration[,]" and his opinion that Plaintiff exhibited "[m]arked deficits" in her "ability to socially interact and adapt." (R. 31, 399). The ALJ specifically noted that Dr. Ciali relied upon findings of blunted affect, variable eye contact, slightly impaired memory, scoring below normal on the Montreal Cognitive Assessment test, and Plaintiff's reports of PTSD and depression and anxiety symptoms. (R. 31). She then provided the following evaluation of Dr. Ciali's opinion:

> This evidence is generally supportive of a marked limitation in interacting with others. However, this evidence is more supportive of greater limitations in understanding, remembering, or applying information and concentration, persistence, and maintaining pace, specifically the claimant's reporting of depressive symptoms including difficulty concentrating and findings of impaired memory and below average cognitive performance. Further, the complete evidence of record is more consistent with a lesser limitation in adapting oneself. While the claimant has reported symptoms of PTSD and has been noted to have abnormal attitude, eye contact, and insight, she more frequently was noted to have fair to normal judgment, normal thought content and behavior, and good eye contact and insight [R. 403-05, 588-95]. These findings are consistent with only a moderate limitation in adapting or managing oneself. The complete evidence of record overall is consistent with understanding, remembering, and carrying out simple and detailed but not complex tasks[,] occasionally interacting with coworkers and supervisors with no interaction with the public or tandem/team work, and only occasional changes in work process. As such, this opinion is only somewhat persuasive.

*Id*.

The Court finds no error in the ALJ's evaluation of Dr. Ciali's opinion. Contrary to Plaintiff's argument, the ALJ's above explanation demonstrates she considered Plaintiff's reports of depression and anxiety symptoms recorded on the PHQ-9 and the GAD-7. Moreover, the ALJ did not substitute her judgment over that of Dr. Ciali. While it is true that an "ALJ may not substitute [her] own opinion for that of [Plaintiff's] doctor," *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996), it is "the ALJ, not a physician, [who] is charged with determining a claimant's

11

RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). There is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). In this case, the ALJ specifically explained why she found the evidence was more consistent with a lesser limitation in adaptation and identified the record evidence to support her conclusion.

Plaintiff also asserts the ALJ erred in evaluating the prior administrative findings of the state agency psychologists. She contends "[t]he ALJ failed to note that the reviewer at the time of reconsideration failed to describe how her [s]ection [III] findings [on the Mental Health Residual Functional Capacity Assessment ("MRFCA") form] complied with her [s]ection I findings[,]" and she "failed to acknowledge that the second mental reviewer admitted Claimant was worse at the time of reconsideration than at the initial review." (Docket No. 8 at 8).

The Court finds no merit to either contention. First, Plaintiff has failed to explain how on reconsideration the reviewing psychologist, Debby Doughty, Ph.D., failed to account for her findings in section I of the MRFCA when providing her narrative explanation in section III. Findings at section I of the MRFCA have been described by the Social Security Administration's Program Operations Manual System ("POMS") as "'merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation [that] does not constitute the RFC assessment.'" *Fannin v. Comm'r, SSA*, 857 Fed. Appx. 445, 447 (10th Cir. 2021); quoting SSA POMS DI24510.060. Dr. Doughty decided the presence and degree of functional limitations in section I and then provided a narrative explanation in section III, concluding that Plaintiff could do "simple and some detailed tasks up to [three] or [four] steps of instruction [and] . . . relate on a superficial, incidental basis." (R. 113). She determined Plaintiff's

adaptive functions were intact. *Id*. This was all she was required to do. *See Fannin*, 857 Fed. Appx. at 447-48 ("Challenges to whether an ALJ assessment of [RFC] incorporate limitations in section I ask 'the wrong question . . . . We compare the [ALJ's] findings to [the] opinion on [RFC], not [the] notations of moderate limitations.'"), quoting *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016).

Second, Plaintiff misstates that Dr. Doughty concluded Plaintiff's condition had worsened from the time of the initial review to reconsideration. Plaintiff's citation to the record includes questions addressed to Plaintiff about her medical conditions on reconsideration, including whether her physical or mental conditions had changed "for better or worse[.]" Plaintiff indicated her conditions had changed, and the "Claimant-supplied Information" included that her "[b]ack pain has gotten worse[,] . . . PTSD isn't getting any better, more pain in my left arm[, and] back is always throbbing and feels like electricity shocking me." (R. 97). However, when determining Plaintiff's mental RFC, Dr. Doughty acknowledged Plaintiff's report that her PTSD was not getting better, but also noted that Plaintiff "ha[d] no additional treatment or medications" and adopted the findings from the initial determination. (R. 113).

Further, Plaintiff raises the argument that because the ALJ determined the opinions of the consulting psychologist and the state agency psychologists were all "somewhat persuasive," the ALJ should have considered all the factors set forth in 20 C.F.R. § 920c(c), under the provision of the regulation wherein the ALJ determines there are two equally persuasive opinions on an issue. (Docket No. 8 at 8-9). The regulation provides that "[w]hen we find that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for

those medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 416.920c(b)(3).  However, as argued by Defendant, and this Court agrees, the ALJ's mere use of the same "descriptor" regarding the persuasiveness of certain opinions "does not render them 'equally persuasive.'" (Docket No. 13 at 13), citing *Kelly B. R. v. Kijakazi*, No. 2: 20-cv-00339-JHR, 2022 WL 204634, at *4 (D. Me. Jan. 23, 2022).  As discussed by the court in *Kelly B. R.*, the regulation contemplates a finding by the ALJ that two or more opinions are "equally persuasive" to trigger the required discussion of the additional factors.  *Id*.  Here, there was no such finding by the ALJ, and thus no trigger to consider the additional factors.

Finally, within her argument regarding the ALJ's failure to consider the additional factors under 20 C.F.R. § 416.920c(c), Plaintiff appears to insert a challenge to the ALJ's analysis of subjective symptoms.  (Docket No. 8 at 8-9).  Deference must be given to an ALJ's evaluation of a claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole.  *See Casias*, 933 F.2d at 801.  An ALJ's findings, however, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  "[S]o long as the ALJ 'sets forth the specific evidence [s]he relies on in evaluating the [consistency of the claimant's subjective complaints],' [s]he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary*, 695 F.3d at 1167, quoting *Qualls*, 206 F.3d at 1372.

The Court finds no error by the ALJ for relying upon the Plaintiff's activities of daily living and failure to follow prescribed treatment when evaluating Plaintiff's symptoms, as such factors are appropriate for the ALJ to consider in the symptom analysis.  *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. § 416.929(c)(3).  Here, in addition to the medical evidence, the ALJ specifically considered Plaintiff's function report,

hearing testimony, and a third-party statement completed by Plaintiff's husband. (R. 27). She determined Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms were not "entirely consistent with the medical evidence and other evidence in the record[.]" *Id*. In doing so, the ALJ appropriately relied upon Plaintiff's failure to follow prescribed treatment, referencing specific instances as examples in the decision. (R. 28, 29, 32). Moreover, contrary to Plaintiff's argument (*see* Docket No. 8 at 8-9), the ALJ was not required to engage in the noncompliance analysis, as she "did not rely on noncompliance as an independent basis to deny disability benefits; rather, [s]he considered noncompliance as an adverse factor in evaluating Plaintiff's subjective symptoms." *Kenton L. C. v. Kijakazi*, No. 20-CV-260-JFJ, 2021 WL 5154118, at *6 (N.D. Okla. Nov. 5, 2021), citing *Johnson v. Colvin*, 640 Fed. Appx. 770, 774 (10th Cir. 2016) ("[W]hen, as here, noncompliance with prescribed treatment is invoked not as an independent basis for denying disability but only as a factor diminishing the credibility of a claimant's allegations of the severity of symptoms prompting treatment, the ALJ need not also find the foregone treatment would have restored the claimant's ability to work.").

It was also appropriate for the ALJ to rely upon Plaintiff's activities of daily living as a factor in evaluating Plaintiff's symptoms. Plaintiff argues that her sporadic performance of minimal activities does not support her ability to perform activity on a routine basis (Docket No. 8 at 8-9), citing to her function report and relying upon *Thompson v. Sullivan*, 987 F.2d 1482 (10th Cir. 1993). However, "*Thomspon* stands for the proposition that <u>disproportionate</u> reliance on minimal and sporadic daily activities to undercut a claimant's allegations of disabling pain is improper." *See Mitchell B. v. Kijakazi*, No. 22-cv-00077-SH, 2023 WL 5165574, at *5 (N.D. Okla. Aug. 11, 2023) (emphasis in original). In this case, the ALJ considered Plaintiff's activities of daily living along with the other evidence in the record, and she did not evaluate Plaintiff's

symptoms based solely upon Plaintiff's activities. *Id*. (finding no error in the ALJ's reliance on "sporadic, minimal activities" when evaluating Plaintiff's symptoms because "the ALJ did not discount the intensity, persistence, and limiting effects of Plaintiff's pain solely because of his daily activities. Instead, the ALJ considered these activities in conjunction with the record as a whole.") (internal citation omitted).

### Step-Five Determination

Plaintiff contends the ALJ erred at step five by determining she could perform the job of mail clerk. She asserts the Dictionary of Occupational Titles ("DOT") assigns the mail clerk position a reasoning level of three, which is inconsistent with her RFC to "understand, remember, and carry out simple and detailed, but not complex, tasks (SVP 1-4)," creating a conflict between the VE's testimony and the DOT. (Docket No. 8 at 5-6); *see also* DOT § 209.687-026, 1991 WL 671813. She further contends that if the mail clerk position is eliminated, the remaining step-five jobs do not constitute a significant number of jobs in the national economy. *Id*. at 6.

At step five, the ALJ has a duty to develop the record, which includes "[q]uestioning a [VE] about the source of h[er] opinion and any deviations from [the DOT]." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id*.; *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled."). The VE in this case testified that an individual with Plaintiff's RFC could perform the jobs of final inspector, conveyor line bakery worker, mail

clerk, and office helper. (R. 68-72). She specifically identified the areas of her testimony not addressed by the DOT, clarified upon what she based her testimony, and indicated her testimony was otherwise consistent with the DOT. (R. 72-73).

The DOT classifies each job according to the General Education Development ("GED") Scale, which includes a reasoning level component. *See* DOT, app. C, § III, 1991 WL 688702. The "Reasoning Development" component of the GED has six levels, with level one representing the lowest level of development and level six representing the highest. *Id*. The job of mail clerk has a reasoning level of three. *Id*. at § 209.687-026, 1991 WL 671813. A reasoning level of three requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving concrete variables in or from standardized situations." *Id*.

As authority for her contention that she cannot perform the job of mail clerk, Plaintiff solely relies on *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005) and *Pritchett v. Astrue*, 220 Fed. Appx. 790 (10th Cir. 2007) for the proposition that "[t]he Tenth Circuit has found that an individual limited to 'simple, detailed' work cannot perform a job requiring a reasoning level of three." (Docket No. 8 at 5). However, a review of *Hackett* and *Pritchett* reveals that neither case specifically addresses Plaintiff's RFC limiting her to "simple and detailed, but not complex, tasks (SVP 1-4)." In *Hackett*, the Tenth Circuit determined an RFC for "simple and routine work tasks" appeared to be more consistent with a reasoning level of two than a reasoning level of three, creating an "apparent conflict." 395 F.3d at 1176. Moreover, in *Pritchett*, the Tenth Circuit concluded that "[a]s in *Hackett*, a level-three reasoning requirement seems inconsistent with the ALJ's conclusion that plaintiff can only do jobs which present simple, repetitive and routine tasks." 220 Fed. Appx. at 793. Here, Plaintiff is not limited to simple and routine work, and she wholly

17

fails to explain how her RFC is inconsistent with a GED reasoning level of three.[5] Because there is no "apparent unresolved conflict" between Plaintiff's RFC and her ability to perform the mail clerk position, there is no need for the ALJ to elicit additional testimony from the VE. Further, because the Court has rejected Plaintiff's argument regarding the mail clerk position, her argument regarding whether a significant number of jobs exist also fails.

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 8th day of March, 2024.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[5] The Court notes there is authority for a finding that Plaintiff's RFC does not conflict with level-three reasoning. *See Gaines v. Colvin*, No. CIV-15-0591-HE, 2016 WL 3189275, at *1-2 (W.D. Okla. June 7, 2016) (discussing level-three reasoning and distinguishing the claimant's RFC for "performing simple to detailed tasks with routine supervision" from *Hackett* because "Gaines was determined to be able to perform tasks more detailed than just simple, repetitive tasks[,]" and finding that "[t]he plain language of the DOT definition reveals no apparent inconsistency with that capability, either"); *Lean v. Saul*, No. CV-18-505-SCY, 2019 WL 3457830, at *19-20 (D. N.M. July 31, 2019) (distinguishing the claimant's RFC to "carry out simple and detailed, but not complex, tasks" from *Hackett* and finding no conflict between the VE's testimony that the claimant could perform the mail clerk job with a reasoning level of three and the DOT).